Merrimack
No. 94-443

## THE STATE OF NEW HAMPSHIRE

### v.

### CARLETON HALEY

January 23, 1997

*Jeffrey R. Howard*, attorney general (*Mark S. Zuckerman*, senior assistant attorney general, on the briefs and orally), for the State.

*Twomey & Sisti Law Offices*, of Concord (*Nicholas K. Holmes* on the initial brief and orally, and *Jonathan R. Saxe* on the supplemental brief and orally), for the defendant.

*James E. Duggan*, chief appellate defender, and *David M. Rothstein*, assistant appellate defender, of Concord (*Mr. Duggan* and *Mr. Rothstein* on the brief, and *Mr. Rothstein* orally), as *amicus curiae*.

JOHNSON, J. Following a jury trial in the Superior Court (*Smukler*, J.), the defendant, Carleton Haley, was convicted of six counts of aggravated felonious sexual assault, RSA 632-A:2 (1986 & Supp. 1987), and one count each of attempted aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1987); RSA 629:1 (1986), felonious sexual assault, RSA 632-A:3, III (1986), and attempted felonious sexual assault, RSA 632-A:3, III; RSA 629:1. He appeals, arguing that: (1) the court erred in admitting evidence under New Hampshire Rule of Evidence 404(b); (2) the Superior Court (*Manias*, J.) erred in refusing to hold an evidentiary hearing to determine whether the State met the "clear proof" prong of Rule 404(b)'s test for admissibility; (3) the jury may not have reached a unanimous verdict because the State did not differentiate its evidence of charged and uncharged acts; and (4) testimony regarding his silence in the face of an accusation warranted a mistrial. After briefing and argument, we ordered supplemental briefing and reargument and

invited the appellate defender's office to submit a brief as *amicus curiae*. We affirm.

■ We first address the defendant's contention that the court erred in refusing to hold an evidentiary hearing to determine whether the State satisfied the clear proof prong of Rule 404(b)'s admissibility test. The defendant was charged with sexually assaulting his step-granddaughter several times when she was twelve and thirteen years old. Prior to trial, the State moved to admit evidence that the defendant had sexually assaulted the victim on other occasions and that he had tickled and kissed her and touched her with a vibrator when she was younger. At the hearing on its motions, the State asked the court to use the victim's depositions to determine that the uncharged acts had, in fact, occurred. The defendant objected, asserting that the State could not meet its burden of proving the uncharged acts unless the victim testified at the hearing. In support of his contention, the defendant pointed out several inconsistencies between the depositions and a letter the victim had written earlier. The court overruled the defendant's objection and ultimately found the evidence admissible under Rule 404(b).

■ The defendant argues on appeal that the court's refusal to require live testimony from the victim violated his right to due process under the State and Federal Constitutions. *See* U.S. CONST. amend. XIV; N.H. CONST. pt. I, art. 15. The starting point for addressing this claim is Rule 404(b), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have held that

> [e]vidence of other bad acts is only admissible if relevant for a purpose other than to prove the defendant's character or disposition, *if there is clear proof the defendant committed the other acts,* and if the prejudice to the defendant does not substantially outweigh the probative value of the evidence.

*State v. Kirsch*, 139 N.H. 647, 653, 662 A.2d 937, 942 (1995) (emphasis added). The defendant maintains that when proof of the uncharged acts depends on a witness's credibility, the State must prove the acts

through the witness's live testimony. No statute, court rule, or case law requires an evidentiary hearing on Rule 404(b) motions, *cf.* N.H. R. EV. 104; the defendant relies on the due process clauses of the State and Federal Constitutions for authority. We begin by analyzing the defendant's claim under the New Hampshire Constitution. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1984).

■■ "[D]ue process under our constitutional republic has, as a primary consideration, the notion that no matter how rich or how poor, all of our citizens are entitled to fundamental fairness when the government seeks to take action which will deprive them of their property or liberty interests." *City of Claremont v. Truell*, 126 N.H. 30, 36, 489 A.2d 581, 586 (1985) (quotation omitted). To determine whether a government action satisfies due process requirements, "we first decide whether the challenged procedure concerns a constitutionally protected interest, and if so, we then determine whether the procedure at issue afforded the requisite safeguards." *In re Tracy M.*, 137 N.H. 119, 122, 624 A.2d 963, 965 (1993). We hold that a pretrial hearing on the admissibility of evidence does implicate a defendant's liberty interest because the outcome of a criminal trial may depend on the admission or exclusion of certain evidence. We therefore proceed to consider whether live testimony was required to safeguard the defendant's due process rights. To make this determination, we weigh the following factors:

> (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Petition of Bagley*, 128 N.H. 275, 285, 513 A.2d 331, 338-39 (1986).

The private interest affected by a pretrial hearing on the admissibility of evidence is important because, as noted above, a conviction may hinge on the admission or exclusion of certain evidence. Such a hearing, however, is not a trial. *Cf. In re Eduardo L.*, 136 N.H. 678, 687, 621 A.2d 923, 929 (1993) (observing that interest at stake in juvenile certification hearings is not as compelling as in pretrial detention hearings).

Turning to the test's second prong, we acknowledge that a proffer of evidence presents a greater risk of an erroneous pretrial ruling than live testimony. A trial court, however, "may consider the indicia of trustworthiness of evidence sought to be admitted, and it has the

discretion to require live witnesses where it is not satisfied with the trustworthiness." *Id.* at 687-88, 621 A.2d at 930. In this case, the State presented not merely a proffer, but the sworn testimony of the victim, contained in two depositions. Moreover, in rebuttal, the defendant proffered the contents of a letter the victim had written, pointing out several inconsistencies in her story. It does not appear that the victim's live testimony would have significantly increased the accuracy of the court's evidentiary determination. We note that at trial, the defendant had the opportunity to cross-examine the victim. If the evidence had cast doubt on the validity of the court's pretrial ruling, the defendant could have moved for reconsideration or for a mistrial.

The third prong of the test asks us to consider the government's interest in the procedure used. As in *Eduardo L.*, the governmental interest here is "compelling . . .; namely, to avoid transforming [a] . . . hearing into a full-blown trial, and to reduce fiscal and administrative burdens on the court, the prosecution, and law enforcement officials." *Id.* at 688, 621 A.2d at 930; *see also State v. Poulicakos*, 131 N.H. 709, 713, 559 A.2d 1341, 1344 (1989). The government also has an interest in sparing victims of sexual assault from the additional trauma of repeated questioning. *See State v. Howard*, 121 N.H. 53, 57, 426 A.2d 457, 459-60 (1981).

After weighing the three factors, we conclude that the due process clause of the New Hampshire Constitution does not necessarily require — and in this case did not require — live testimony at a pretrial hearing on the admissibility of evidence under Rule 404(b). We are unaware of any federal decisions on this issue but note that the test for addressing the defendant's claim under the due process clause of the fourteenth amendment to the United States Constitution would be less advantageous to him than the test we use under the State Constitution. *See Medina v. California*, 505 U.S. 437, 442-46 (1992). We therefore hold that the Federal Constitution provides no greater protection than the New Hampshire Constitution in this instance and undertake no separate federal analysis. *See State v. Davis*, 139 N.H. 185, 189, 650 A.2d 1386, 1388 (1994).

The defendant next argues that the trial court erred in admitting the uncharged acts under Rule 404(b). In its pretrial motions, the State separated the acts into two categories. We consider first the State's proffer that the defendant's conduct progressed gradually over the course of years from nonsexual contact to lesser sexual acts and finally to attempted intercourse.

The State wished to admit evidence that "[t]he defendant began tickling and kissing the victim and used a vibrator over the victim's

body when she was a child. The defendant progressed to tickling the victim in her genital areas and then to digital penetration as charged in the indictments." The State argued that this evidence would be relevant "to show that the defendant prepared to commit the offenses charged in the respective indictments by grooming the child victim." The superior court agreed:

> [The evidence] would tend to show that the defendant had the opportunity to, and did, establish trust and physical familiarity with the complainant prior to the time of the alleged assaults. That the complainant trusted the defendant and allowed him to touch her makes it more likely that she would allow him to perform the acts alleged in the indictment.

The court found clear proof that the acts occurred, and found that the prejudicial effect of the evidence would not substantially outweigh its probative value.

Preliminarily, we establish the appropriate standard of review. The defendant argues that we should conduct a *de novo* review of the superior court's ruling because the decision was not based on an assessment of live testimony. *See Hillside Assocs. of Hollis v. Maine Bonding & Cas. Co.*, 135 N.H. 325, 330-31, 605 A.2d 1026, 1029 (1992). Normally, "[t]he decision to admit 'bad acts' evidence lies within the trial court's sound discretion and will be overturned only if the defendant can show that the decision was clearly untenable or unreasonable to the prejudice of his case." *State v. McGlew*, 139 N.H. 505, 507, 658 A.2d 1191, 1193 (1995). We decline to abandon this review standard here. The superior court based its ruling in part on documents not contained in the appeal record, such as the victim's interview with a police officer. Thus, it is erroneous to say that "the lower court was in no better position to decide the case than are we." *Hillside Assocs. of Hollis*, 135 N.H. at 330, 605 A.2d at 1029.

■ We find no abuse of discretion in the superior court's ruling. We agree that the escalating uncharged acts which were perpetrated against the victim over several years tended to show the defendant's preparation to commit the crimes charged. *See State v. Castine*, 141 N.H. 300, 304, 681 A.2d 653, 656 (1996). The evidence was therefore "relevant for a purpose other than to show the defendant's bad character or disposition," *State v. Bassett*, 139 N.H. 493, 496, 659 A.2d 891, 894 (1995), and met the first prong of the Rule 404(b) admissibility test.

This case is distinguishable from our decision in *State v. Melcher*, 140 N.H. 823, 678 A.2d 146 (1996), another sexual assault case

involving the admissibility of prior sexual abuse of the young victim. The uncharged acts in *Melcher*, unlike those in this case, did not involve a progressive, steady desensitization of the victim. *See id.* at 829, 678 A.2d at 150. Thus, the acts in *Melcher* could not have been deemed preparatory.

We also find no abuse of discretion in the court's finding of clear proof that the uncharged acts occurred. Although the defendant was able to point out several inconsistencies in the victim's story, the differences pertained only to some of the details of the acts alleged. The victim's descriptions were largely unvarying; the superior court was therefore entitled to rely on them. We uphold the court's conclusion that, "[c]onsidering [the victim's] age when the acts are alleged to have occurred and the overall consistency of her deposition and other statements, the Court finds that the State has satisfied the clear proof standard."

The court's balancing of the likely prejudicial effect and probative value of the evidence, *see Bassett*, 139 N.H. at 496, 659 A.2d at 894, also withstands scrutiny. As discussed above, evidence that the defendant had tickled and kissed the victim and used a vibrator on her was highly probative of the defendant's preparation to commit the charged acts. Although the prejudicial effect of these preparatory acts was probably significant, *see State v. Carter*, 140 N.H. 1, 5-6, 662 A.2d 289, 291 (1995), the defendant has not demonstrated that this effect *substantially outweighed* the evidence's probative value. As the evidence of the uncharged acts meets the three prongs of the Rule 404(b) admissibility test, the superior court's decision to admit the evidence was neither clearly untenable nor unreasonable to the prejudice of the defendant's case. *McGlew*, 139 N.H. at 507, 658 A.2d at 1193.

We turn now to the second category of uncharged acts the State sought to admit, that on many different occasions the defendant committed acts identical to the ones charged. The State moved to admit this evidence to prove intent. The defendant argues that the evidence fails the first prong of the Rule 404(b) admissibility test because intent was not seriously at issue. He points out that at trial he never suggested that he committed the charged acts without a criminal intent; rather, he maintained that the acts never occurred. The defendant, however, did not concede the issue of intent. Therefore, "the State bore the burden of proving that the defendant knowingly committed each element of the offenses charged." *Bassett*, 139 N.H. at 500, 659 A.2d at 896; *see State v. Ayer*, 136 N.H. 191, 195, 612 A.2d 923, 925 (1992). "[T]he defendant's

intent was sufficiently at issue . . . to require some evidence at trial." *Bassett*, 139 N.H. at 500, 659 A.2d at 896; *see also McGlew*, 139 N.H. at 507, 658 A.2d at 1194; E. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 5:09, at 5-23 (1995). We recently held that

> [t]o be relevant to intent, evidence of other bad acts must be able to support a reliable inference, not dependent on the defendant's character or propensity, that the defendant had the same intent on the occasions of the charged and uncharged acts. We will find sufficient support for a reliable inference of intent only if the defendant's intent in committing other bad acts and the defendant's intent in the charged offenses is closely connected by *logically significant factors*.

*Bassett*, 139 N.H. at 499, 659 A.2d at 896 (emphasis added). In this case, the requirements of *Bassett* were satisfied and the prior bad acts were admissible to show intent. *See also State v. Lapage*, 57 N.H. 245 (1876).

With respect to the clear proof prong of the test, we again find no abuse of discretion in the superior court's assessment. The court reasoned:

> The complainant has all along charged that the defendant committed these acts upon her repeatedly. This is evident from her interview with Concord Police Officer Kathleen Mulvaney on September 21, 1992. That the complainant contradicted herself with respect to what grade she was in when the assaults began, or expressed some uncertainty as to precisely when and where certain acts occurred, does not undermine the overall consistency of her allegations. Given the nature of the allegations in the present indictments returned by the grand jury, there is nothing inherently incredible about further allegations that the defendant committed the same or similar acts upon the complainant at other times during the three-year period. Nor does there appear to be any qualitative difference in the proffered testimony regarding the charged and uncharged conduct.

Our review of the record reveals no abuse of discretion in the court's conclusion.

Though the defendant's intent was not seriously in dispute, we find no abuse of discretion in the court's ruling that the prejudicial effect of the uncharged acts did not substantially outweigh their probative value. The defendant has not demonstrated .that the

prejudicial effect of the uncharged acts *substantially outweighed* their probative value. As the superior court noted in its pretrial order,

> [b]ecause of the multitude of indictments, the jury will inevitably be presented with information regarding other bad acts allegedly committed by defendant against the complainant. . . . Presenting evidence of other uncharged acts of the defendant with respect to the same alleged victim is neither surprising nor unduly prejudicial, given the nature of the allegations in this case.

Moreover, the State presented the evidence of both the charged and the uncharged acts solely through the testimony of the victim. The trial court clearly instructed the jury several times that it must decide for itself whether the evidence of the uncharged acts was credible. Accordingly, we agree with the court's conclusion that whether or not the State used the uncharged acts evidence, "the prosecution [would] rise or fall with the credibility of the complainant alone." We hold that the court's admission of the uncharged acts was neither clearly untenable nor unreasonable to the prejudice of the defendant's case. *McGlew*, 139 N.H. at 507, 658 A.2d at 1193.

Our conclusion does not conflict with our holding in *State v. Marti*, 140 N.H. 692, 672 A.2d 709 (1996), another case involving Rule 404(b) in the sexual assault context. In *Marti*, the State introduced testimony by the victim about hundreds of uncharged sexual assaults to assist in proof of one indictment. *See id.* at 693, 672 A.2d at 710. In this case, unlike *Marti*, the victim's testimony on the number of uncharged acts was somewhat unclear and did not lend itself to ready or convenient calculation; moreover, a review of the record reveals that we may safely conclude that the aggregate number of uncharged acts did not rise to the level deemed prejudicial in *Marti*. *See id.* at 695, 672 A.2d at 711. On the facts of this case, it is unlikely the jury would have discerned an excessive number of prior bad acts, and thus the delicate balance was not tipped toward "an undue tendency to induce a decision against the defendant on some improper basis." *State v. Cochran*, 132 N.H. 670, 672, 569 A.2d 756, 757 (1990).

The defendant next contends that the jury may not have reached a unanimous verdict because the State did not differentiate its evidence of charged and uncharged acts. The defendant bases his argument on our decision in *State v. Patch*, 135 N.H. 127, 599 A.2d 1243 (1991); we find that case distinguishable. In *Patch*, the indictment charged the defendant with a "course of conduct." *Id.* at

128, 599 A.2d at 1243. "Evidence of more than one incident was admitted at trial without any indication as to which incident the jury was to focus upon in determining guilt. Thus, it [was] possible that not all of the jurors were considering the same act when they voted unanimously to convict." *Id.* at 129, 599 A.2d at 1244. In this case, lack of unanimity was not a risk. Each of the nine indictments alleged only *one* act of a particular sexual nature. When the victim testified that a particular kind of act occurred on many occasions, she did not describe each occasion. Instead, she simply stated that such an act happened many times. Thus, the jurors could not have been focusing on different occasions when they determined that the particular act alleged in an indictment occurred.

Finally, the defendant argues that testimony about his silence in the face of an accusation warranted a mistrial. The testimony at issue was elicited during the prosecutor's direct examination of a police officer:

> Q. Now, Lieutenant Marchand, at that time [when the defendant came to the police station to turn himself in] did [the defendant] say anything to you specifically regarding the charges that he had then been informed of in a formal fashion?

> A. He was reading — or I believe Officer Mul[v]aney was reading the complaints to him down in the holding cell area while we were booking him. One of the charges said penetration and he exclaimed that he had never penetrated the girl, only fondled her. I explained to him that there was different types of penetration other than penile penetration and *at that point, he stayed quiet.*

> Q. There was nothing further said?

> A. Correct.

(Emphasis added.) The defendant requested a mistrial, noting that he had invoked his right to remain silent prior to the conversation described by the police officer. The trial court denied the request, and the defendant declined the court's offer to give a curative instruction.

Assuming for the sake of argument that the officer's testimony was inadmissible, we uphold the trial court's ruling that no mistrial was warranted.

> To justify a mistrial, prejudicial testimony must be more than inadmissible, it must constitute an irreparable injustice that cannot be cured by jury instructions. Absent an

abuse of the discretion afforded to the trial court because of its optimal vantage point for measuring prejudicial effect, we will not reverse the trial court's decision to deny a mistrial. Where the objectionable testimony is ambiguous in nature, the defendant is not so prejudiced that a mistrial is required.

*State v. Rogers*, 138 N.H. 503, 505, 642 A.2d 932, 934 (1994) (citations and quotations omitted). A curable injustice is not grounds for a mistrial regardless of whether the defendant chooses to request an instruction. *See State v. Hunter*, 132 N.H. 556, 561-62, 567 A.2d 564, 568 (1989).

 We agree with the trial court that the officer's testimony created no incurable injustice. As in *Rogers*, 138 N.H. at 505, 642 A.2d at 934, the disputed testimony was ambiguous. The jury could have interpreted it as a tacit admission, but also could have concluded that the defendant "stayed quiet" because he had already denied the allegations and felt no need to repeat himself. Given the unremarkable context in which the testimony appeared, as well as the absence of suggestion that the jury drew an improper inference from the officer's words, we find no abuse in the trial court's determination that any injustice was curable. *See State v. Blow*, 135 N.H. 640, 642-43, 608 A.2d 1309, 1311 (1992).

*Affirmed.*

All concurred.