Strafford
No. 95-819

## THE STATE OF NEW HAMPSHIRE

v.

## THOMAS CROSBY

July 1, 1997

*Jeffrey R. Howard*, attorney general (*Ann M. Rice*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, assistant appellate defender, of Dover, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Thomas Crosby, was indicted on two counts of aggravated felonious sexual assault by means of digital vaginal penetration and one count of aggravated felonious sexual assault by means of digital anal penetration. *See* RSA 632-A:2 (1996). After a jury trial, the defendant was convicted on the indictments alleging vaginal penetration and acquitted on the charge of anal penetration. On appeal, the defendant argues that the Superior Court (*Fitzgerald*, J.) erred in ruling that the victim could testify that the defendant had assaulted her on occasions other than those charged in the three indictments. We reverse and remand.

The State adduced the following facts at trial. In 1991, the defendant resided in Nottingham, Rockingham County, with his girlfriend, Robyn, and her two children, the victim and the victim's brother, then aged six and seven years old, respectively. Because Robyn was allergic to the defendant's dogs, the defendant's former wife kept the dogs at her home in Strafford, Strafford County. On two occasions, the defendant took the children to his former wife's house to care for the dogs. The victim testified that the defendant assaulted her on both occasions: the first time, in the fall of 1991, he digitally penetrated her vagina, and the second time, in August 1994, he digitally penetrated her vagina and anus. The victim disclosed the assaults to her mother in January 1995, after the defendant and the victim's mother had married. Dr. Wendy Gladstone, a physician who examined the victim after the assaults, testified that the physical examination revealed evidence consistent with repeated sexual abuse. The defendant in his trial testimony denied having any sexual contact with the victim.

Before trial, the defendant sought to prevent the introduction of evidence that he had previously assaulted the victim at the house in Nottingham. *See* N.H. R. EV. 404(b). The State argued that Dr. Gladstone's testimony would demonstrate that the victim had been sexually assaulted repeatedly and that without the victim's testimony about the assaults in Nottingham, the jury would be unable "to understand the [medical] evidence in a rational context." The trial court accepted the State's proffer that the testimony about the Nottingham assaults was necessary to explain the medical evidence, and the victim ultimately testified that the defendant had assaulted her many times in Nottingham from the time she was five or six years old until the time of the last charged act, when the victim was nine years old.

The prosecutor referred to the Nottingham assaults in both his opening and closing statements to the jury. In his closing, he stated that the defendant had molested the victim "repeatedly, repeatedly." Defense counsel objected and moved for a mistrial. The trial court sustained the objection but denied the motion; the court instructed the jury that the evidence of other allegations should be used "only for the limited purpose of putting certain evidence in context and may not be used . . . to infer guilt as to these indictments." The court had issued similar instructions following the victim's testimony and in its final charge to the jury.

The defendant now argues that the trial court erred in admitting the victim's testimony about the Nottingham assaults in violation of New Hampshire Rule of Evidence 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence of other bad acts is admissible only "if relevant for a purpose other than to prove the defendant's character or disposition, if there is clear proof the defendant committed the other acts, and if the prejudice to the defendant does not substantially outweigh the probative value of the evidence." *State v. Carter*, 140 N.H. 1, 4, 662 A.2d 289, 291 (1995) (quotation omitted). We will not disturb the trial court's determination that such evidence is admissible unless that determination constitutes an abuse of discretion. *See id.* at 3-4, 622 A.2d at 290.

The defendant initially challenges the admission of the victim's testimony on relevancy grounds. The proponent of bad acts evidence — in this case, the State — bears the burden of demonstrating its relevance. *See State v. McGlew*, 139 N.H. 505, 509, 658 A.2d 1191, 1195 (1995). To be relevant, the evidence must "tend to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity." *Id.* at 510, 658 A.2d at 1195.

The State contends that the victim's testimony about the Nottingham assaults was relevant to the issue of the defendant's identity. Under Rule 404(b), bad acts evidence may be used to

establish "the defendant's identity as the perpetrator of the charged crime." E. IMWINKELREID, UNCHARGED MISCONDUCT EVIDENCE § 3:02 (1995). The State, however, did not raise this particular ground for admitting evidence of the Nottingham assaults before the trial court; consequently, we decline to consider this argument on appeal. *See State v. Sterndale*, 139 N.H. 445, 448, 656 A.2d 409, 411 (1995).

■ The State also argues that evidence of the Nottingham assaults was relevant to explain the medical testimony, asserting that "[w]ithout the information necessary to put the medical evidence in its proper context, the jury would be left with the misleading impression that [the victim] had either been abused by someone else, was lying, or [was] withholding information about the other assaults." We have stated that the admission of bad acts evidence in the State's case in chief cannot be "justified by a belief in advance of trial that excluding this evidence will mislead the jury." *State v. Melcher*, 140 N.H. 823, 830, 678 A.2d 146, 150 (1996). Unless the defendant opens the door to speculation about facts and events material to an issue actually in dispute, or bad acts evidence is admissible for another permissible purpose, "the fundamental demands of justice and fairness compel its exclusion." *Id.* at 830, 678 A.2d at 151.

■ Here, the State's purported need to supplement Dr. Gladstone's medical testimony with evidence of the Nottingham assaults stemmed from a pretrial belief that the jury would misapprehend the medical testimony. While the jury might have speculated about the medical evidence suggesting uncharged assaults, the State assumed the risk of such conjecture by electing to present the medical testimony as it did. Rather than eliciting testimony about repeated abuse, the State alternatively could have confined Dr. Gladstone's testimony to evidence of the charged assaults. The State may not employ a trial strategy of introducing evidence which itself creates the necessity for admitting bad acts evidence. *Cf. State v. Crosman*, 125 N.H. 527, 530-31, 484 A.2d 1095, 1097-98 (1984) (introduction of otherwise inadmissible evidence justified when opposing party creates misleading advantage). As the State advanced no independent relevance ground to support the admission of the evidence of the Nottingham assaults in its case in chief, the trial court erred in allowing this testimony. *See McGlew*, 139 N.H. at 509-10, 658 A.2d at 1195 (proponent of bad acts evidence must articulate specific purpose for which evidence is offered and how evidence tends to prove or disprove issue actually in dispute).

The State maintains that any error in admitting this evidence was harmless. The State bears the burden of proving harmless error. *See State v. Silk*, 138 N.H. 290, 291, 639 A.2d 243, 244 (1994). In determining whether an error was harmless, we ask not "whether the evidence, apart from that erroneously admitted, would support a finding of guilt, but whether it can be said beyond a reasonable doubt that the inadmissible evidence did not affect the verdict." *State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976). "The evaluation of whether this standard has been achieved involves consideration of the alternative evidence presented at trial and of the character of the inadmissible evidence itself." *State v. Vandebogart*, 139 N.H. 145, 157-58, 652 A.2d 671, 679 (1994) (quotation and citation omitted).

The State suggests the error was harmless because the jury acquitted the defendant of the anal penetration charge. Although the victim did not specify whether the Nottingham assaults involved vaginal or anal penetration, the record shows that Dr. Gladstone testified only about physical evidence of vaginal penetration. Given that the evidence of the Nottingham assaults was admitted — and the jury was instructed to consider it — for the purpose of explaining the medical testimony, we must assume the jury considered the bad acts evidence only in respect to the physical evidence of vaginal penetration. *See State v. Novosel*, 120 N.H. 176, 186, 412 A.2d 739, 746 (1980) ("[o]ur system of justice is premised upon the belief that jurors will follow the court's instructions"). That the jury acquitted the defendant of the anal penetration charge, then, has little bearing on the question whether the inadmissible evidence affected the verdicts on the vaginal penetration indictments.

Aside from Dr. Gladstone's testimony, the alternative evidence at trial consisted primarily of the victim's detailed testimony about the charged assaults. Although the erroneously admitted testimony about the incidents in Nottingham was not as specific as the testimony about the charged offenses, the victim clearly indicated that the conduct was similar to the charged offenses and that it had occurred many times. This kind of evidence is inherently prejudicial. *See State v. Marti*, 140 N.H. 692, 695, 672 A.2d 709, 711 (1996). In the circumstances of this case, moreover, it tended to bolster the credibility of both the victim and Dr. Gladstone by corroborating the testimony of each about the charged assaults. *See Bassett*, 139 N.H. at 502-03, 659 A.2d at 898. Consequently, we

cannot say, beyond a reasonable doubt, that it did not affect the verdicts rendered. *See id.* at 503, 659 A.2d at 898.

*Reversed and remanded.*

All concurred.