Merrimack
No. 98-221

### THE STATE OF NEW HAMPSHIRE

v.

### RODNEY GLODGETT

March 16, 2000

688

*Philip T. McLaughlin*, attorney general (*Simon Brown*, attorney, on the brief and orally), for the State.

*Gary Apfel*, assistant appellate defender, of Orford, by brief and orally, for the defendant.

PER CURIAM. The defendant, Rodney Glodgett, was convicted after a jury trial in Superior Court (*McGuire*, J.) of three counts of felonious sexual assault, *see* RSA 632-A:3, II (1996), and one count of attempted felonious sexual assault, *see* RSA 629:1, I (1996); RSA 632-A:3, II. On appeal, he challenges the trial court's decision to admit uncharged misconduct evidence pursuant to New Hampshire Rule of Evidence 404(b). We reverse and remand.

The evidence adduced at trial would support the following findings. The complainant and the defendant's son were close childhood friends. From the age of eight, the complainant progressively spent more time at the defendant's house in Pembroke. Eventually, the complainant began spending weekends at the defendant's house. In August 1995, the defendant moved to Allenstown. Subsequently, the complainant began spending every day at the defendant's residence, returning home to change and to shower. Additionally, the complainant testified that he spent weekends with the defendant at a camp in New Boston during the school year and every day during the summer of 1996.

One evening in November 1996, an argument transpired between the defendant and his son at the Allenstown residence. In the course of the argument, the defendant began to yell at the complainant. When the complainant stated that he wanted to leave and attempted to call for a ride, the defendant ripped the telephone from the wall. The defendant then stated to his son, "Tell [the complainant] how you really feel." The defendant's son told the complainant to "get off [sic] my house before I blow your . . . head off." The complainant ran to a nearby convenience store and called the police. He told a responding officer that he had been threatened and that the defendant had been molesting him.

The defendant was indicted on three counts of felonious sexual assault and one count of attempted felonious sexual assault. Two of the indictments alleged conduct occurring in Pembroke (Pembroke indictments), and two alleged conduct in Allenstown (Allenstown indictments). One Pembroke indictment charged that on or between October 15, 1993, and August 14, 1995, when the complainant was between the ages of thirteen and sixteen, the defendant "insert[ed] the [complainant's] penis into his mouth." See RSA 632-A:3, II. The other charged that during the same time period the defendant "attempted to engage in sexual penetration with [the complainant] by pushing the [complainant's] head towards his exposed penis." See RSA 629:1; RSA 632-A:3, II. One Allenstown indictment charged that on or between August 15, 1995, and April 14, 1996, when the complainant was between the ages of thirteen and sixteen, the defendant "insert[ed] the [complainant's] penis into his mouth." See RSA 632-A:3, II. The other charged that during the same time period the defendant "insert[ed] his penis into the complainant's mouth." See id.

Prior to trial, the State filed a motion in limine seeking to admit testimony from the complainant that the defendant "engaged in a course of conduct of sexual activity" with the complainant both during and subsequent to the time periods alleged in the indictments. The State sought to admit testimony that the defendant engaged in sexual penetration with the complainant as described in the indictments "on many occasions." The trial court granted the State's motion.

At trial, the complainant testified that approximately two months before moving to Allenstown, the defendant first performed fellatio on him at the Pembroke residence after the complainant had become intoxicated with alcohol provided by the defendant. The complainant further testified that until the defendant moved to Allenstown, similar assaults occurred "every weekend, every time I would stay

690

over. It was a lot." The complainant testified that a few weeks after the defendant moved to Allenstown, the assaults "started up again." In addition to the defendant performing fellatio on the complainant, the complainant testified that the defendant had the complainant perform fellatio on him. The complainant also testified that the defendant committed similar assaults at the camp in New Boston "[e]very time we went up. There was [sic] a lot of times it happened over there." The defendant took the position that the complainant was lying, motivated by anger at the defendant for causing his best friend to betray him and order him out of the house during the November 1996 argument.

■ On appeal, the defendant argues that the trial court erred by admitting evidence of uncharged assaults pursuant to New Hampshire Rule of Evidence 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under Rule 404(b), evidence of other bad acts is inadmissible unless it is "relevant for a purpose other than to prove the defendant's character or disposition, . . . there is clear proof the defendant committed the other acts, and . . . the prejudice to the defendant does not substantially outweigh the probative value of the evidence." *State v. Crosby*, 142 N.H. 134, 137, 697 A.2d 1377, 1379 (1997) (quotation omitted). We will uphold a trial court's decision to admit such evidence absent an abuse of discretion. *See id.*

The defendant argues that the trial court abused its discretion because the evidence was not relevant, and because the prejudicial effect of the evidence substantially outweighed its probative value. Because we conclude that the evidence was irrelevant, we need not address whether it was unduly prejudicial.

"The proponent of bad acts evidence . . . bears the burden of demonstrating its relevance." *Id.* To carry that burden, the State is required to "state the specific purpose for which the evidence is offered and . . . articulate the precise chain of reasoning by which the offered evidence will tend to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity." *State v. McGlew*, 139 N.H. 505, 510, 658 A.2d 1191, 1195 (1995). The trial court then "must articulate for

the record the theory upon which the evidence is admitted." *Id.* The State argued prior to trial that the evidence was admissible to demonstrate "a specific 'modus operandi' and/or method of planning in committing [the] conduct," to provide a "comprehensive framework" for the jury to evaluate the charged offenses, and to prove intent. The trial court granted the State's motion *in limine,* finding the evidence relevant: (1) to prove intent; (2) "to provide a comprehensive framework from which the jury can assess facts and credibility"; and (3) to demonstrate the complainant's state of mind because the defendant's theory was that the complainant was lying.

█ █ The defendant first argues that the trial court erred in admitting bad acts evidence to prove intent because the defendant conceded the issue of intent. To be relevant under Rule 404(b), the proffered evidence must be pertinent to an issue that is actually in dispute. *See State v. Melcher,* 140 N.H. 823, 828, 678 A.2d 146, 149 (1996). Where the defendant's intent is a required element of the charged offenses, intent is sufficiently at issue to require some evidence of intent, even if the defendant does not contest intent at trial. *See State v. Haley,* 141 N.H. 541, 547-48, 689 A.2d 671, 675-76 (1997); *State v. Bassett,* 139 N.H. 493, 499-500, 659 A.2d 891, 896 (1995). If, however, the defendant concedes intent, the charged *mens rea* is not sufficiently disputed to justify the admission of other bad acts to prove intent. *See Haley,* 141 N.H. at 547, 689 A.2d at 676; *McGlew,* 139 N.H. at 507, 658 A.2d at 1194.

In his objection to the State's motion *in limine,* the defendant represented that he would not challenge the State's ability to prove intent at trial. Relying on *Haley,* the defendant asserted:

> The defense concedes that if the jury finds beyond a reasonable doubt that the State has proven the *actus reus* of this case, that [the defendant] *committed* the alleged offenses, then the jury need not decide whether he did so with the alleged *mens rea.* For example, when instructing the jury on the elements of the offense, the Court could omit the *mens rea* element.

At the hearing on the motion, defense counsel further stated that "[i]f the jury believes that complainant, knowing and purposely are absolutely not issues in this case; and we would be willing to concede through some sort of — by basically removing intent from the jury, having them only have to find *actus rea* [*sic*]." The defendant argues that these assertions removed the issue of intent from dispute. The State counters that the defendant did not "concede" the issue of

intent because he merely advocated removal of the *mens rea* element of the charged crimes rather than stipulate that he had the required mental state on each charge.

Although we have stated that a defendant may concede intent, we have never articulated the standard to determine whether particular assertions constitute a "concession." We adopt the test articulated by the United States Court of Appeals for the First Circuit:

> To prevent the admission of bad acts evidence, a defendant's offer to concede . . . intent . . . must do two things. First, the offer must express a clear and unequivocal *intention* to remove the issue[] such that, in effect if not in form, it constitutes an offer to stipulate. Second, notwithstanding the sincerity of the defendant's offer, the concession must cover the necessary substantive ground to remove the issue[] from the case.

*United States v. Garcia*, 983 F.2d 1160, 1174 (1st Cir. 1993). Specifically, the defendant must

> express[] himself to the court with sufficient clarity to justify the court in (a) disallowing any subsequent cross-examination or jury argument that seeks to raise those issues, and (b) charging the jury that if they find all other elements beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.

*Id.* (quotations and emphasis omitted).

■ We conclude that the defendant's assertions in this case constituted a concession of intent, thereby removing the issue from dispute. Defense counsel clearly and unequivocally expressed an intention to remove the issue of intent from the jury's consideration. In effect, the defendant offered to stipulate that should the jury find that he committed the alleged acts, he committed them with the requisite level of culpability. That the defendant's expressed intention was clear and unequivocal is underscored by his willingness to consent to an instruction that the jury need not find that he acted with the appropriate *mens rea* to convict him of the charged crimes. *Cf. United States v. Ferrer-Cruz*, 899 F.2d 135, 139 (1st Cir. 1990). Further, the defendant offered to remove the *mens rea* element entirely from his case, thereby covering the necessary substantive ground. *Cf. Garcia*, 983 F.2d at 1175 (defendant's offer to stipulate intent to distribute but not to possess narcotics did not sufficiently concede intent at issue in the case).

■ We reject the State's position that because defense counsel's assertions did not constitute a formal stipulation, he did not in fact "concede" the issue of intent. *See United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980). The defendant having offered to proceed at his own peril by waiving his right to require the State to prove the *mens rea* element of the charged crimes, we conclude that the trial court abused its discretion by admitting the course of conduct to prove the defendant's intent.

We next address the theory of relevance relied upon by the trial court that the evidence was "necessary to provide a comprehensive framework from which the jury can assess facts and credibility." In the motion *in limine*, the State essentially argued that the evidence was necessary to allow the complainant to give an intelligible description regarding the charged acts. The trial court agreed, ruling:

> [T]he proffered evidence is necessary to provide a compre-hensive framework from which the jury can assess facts and credibility. To require the victim to testify to only four charged incidents, without evidence of the ongoing contem-poraneous sexual relationship would lend an artificial air to his testimony in a case which turns upon credibility. Moreover, the charged and uncharged conduct is so similar and occurred over the course of three years that the State could not distinguish among nor indict the defendant for all the alleged acts, and the victim cannot testify to each charged act with sufficient specificity without generally referring to the ongoing sexual abuse.

(Citation omitted.) On appeal, the State asserts that this was a permissible purpose to admit the uncharged bad acts.

■ We need not belabor our analysis of this theory, as we have recently rejected similar reasoning. *See State v. Montgomery*, 144 N.H. 205, 740 A.2d 625 (1999). The admission of bad acts evidence in the State's case in chief is justified neither by a pretrial belief that exclusion of the evidence will mislead the jury, nor by pretrial anticipation of an attack upon the ability of the State's witnesses to recall specific detail regarding the charged assaults. *See id.* at 209, 740 A.2d at 627. Accordingly, we conclude that on the facts before us the trial court abused its discretion by issuing a pretrial ruling admitting the evidence to bolster the complainant's credibility. *See id.* at 209, 740 A.2d at 627.

We next address the trial court's reasoning that the evidence was necessary to evaluate the complainant's state of mind. At the

hearing on the motion *in limine*, the trial court inquired as to the defendant's theory of defense. The defendant's counsel stated that he would assert that the assaults never occurred and that the victim was lying. Upon further inquiry, however, the defendant declined to express his theory as to the complainant's motive to lie, explaining that the motive had not yet been determined, and that such a pretrial disclosure would be unfair. The trial court responded that it needed to know what issues were in dispute to rule on relevance. In its order, the trial court reasoned that although the defendant had not explained the complainant's "exact motive to lie," by taking the position that the crimes did not occur and that the complainant was lying, "the defendant ha[d] placed the victim's state of mind and motives at issue." On appeal, the State argues that because the defendant asserted at trial that the complainant was lying in retaliation for the November 1996 argument, "[t]he victim's testimony explaining the nature and extent of his sexual relationship with the defendant provided the jury with another interpretation of his silence before, but revelation after, the fight with the defendant and his son." Thus, the State argues that admission of the other sexual assaults prior to trial was appropriate to provide a proper context within which to evaluate the complainant's credibility.

█ As an initial matter, we decline the State's invitation to review the trial court's rationale in light of the purported motive to lie that the defendant first introduced at trial. As a general rule, in reviewing a trial court's pretrial admission of evidence pursuant to Rule 404(b), "[w]e consider only what was presented at the pretrial hearing." *State v. Castine*, 141 N.H. 300, 302, 681 A.2d 653, 655 (1996). We so limit our review "[t]o avoid the pitfall of justifying the court's pretrial ruling based upon the defendant's response at trial to the evidence." *Bassett*, 139 N.H. at 497, 659 A.2d at 895. We thus express no opinion as to whether, as suggested by the State, the defendant's trial theory would have "opened the door" to the evidence of the other assaults had the trial court ruled the evidence inadmissible. *See Melcher*, 140 N.H. at 830, 678 A.2d at 150.

█ We reject the argument that the evidence of other sexual assaults was properly admitted to provide context to evaluate the complainant's credibility in light of the defendant's position that the assaults never occurred. "Context, in this instance, is merely a synonym for propensity." *Id.* (quotation omitted). Absent a specific motive to lie that the evidence of uncharged sexual assaults, if believed, would rebut, the evidence is probative of the complainant's credibility only if one concludes that the defendant committed the

uncharged acts and infers that he committed the charged acts. "When, in this manner, an assumption based upon the defendant's propensity toward certain action is the essential connection in the inferential chain supporting relevance, the evidence is inadmissible under Rule 404(b)." *Id.* Accordingly, we conclude that the trial court erred in admitting the uncharged assaults to evaluate the complainant's state of mind in view of the defendant's pretrial position that the charged assaults never occurred and that the complainant was lying.

Finally, we are not convinced in this case that the trial court's error was harmless beyond a reasonable doubt. *See Crosby*, 142 N.H. at 139, 697 A.2d at 1380 (State bears burden to demonstrate beyond a reasonable doubt that error did not affect verdict). The State argues that the evidence of the defendant's guilt was overwhelming, and that the uncharged acts evidence was merely cumulative. Specifically, the State points to testimony that the defendant often had the complainant sleep with him in his bed, and that he often provided the complainant alcohol and marijuana. Additionally, the State relies on testimony from the defendant's son that on one occasion at the Allenstown residence he observed the defendant sitting next to the complainant in bed with his hands under the blanket either between or on the complainant's legs. Further, the State relies on testimony that prior to trial, the defendant attempted to persuade some of the State's witnesses to change their pretrial statements.

■ We cannot conclude that the evidence relied upon by the State renders the evidence of uncharged acts merely cumulative or inconsequential. Rather than being cumulative, much of the evidence relied upon by the State bears no similarity to the uncharged bad acts. *Cf. State v. Fischer*, 143 N.H. 311, 317, 725 A.2d 1, 5 (1999) (evidence cumulative where it was substantially similar to other evidence introduced by State); *State v. Davis*, 143 N.H. 8, 12, 718 A.2d 1202, 1204 (1998) (cumulative evidence defined as additional evidence of the same kind to the same point). Notwithstanding the State's contention that the defendant, and not the State, emphasized the frequency of the assaults, the jury heard testimony elicited by the State that the defendant engaged in conduct identical to the charged conduct on many occasions. By its nature, this sort of evidence is highly prejudicial. *See Crosby*, 142 N.H. at 139, 697 A.2d at 1380; *State v. Marti*, 140 N.H. 692, 695, 672 A.2d 709, 711 (1996); *cf. State v. Hennessey*, 142 N.H. 149, 158, 697 A.2d 930, 936 (1997) (admission of other bad acts harmless where, *inter alia*, they "bore

no similarity to the charged sexual acts"). Moreover, the evidence tended to bolster the complainant's credibility. In view of the prejudicial nature of the evidence, we are unconvinced that the verdicts were unaffected by it. *See Crosby*, 142 N.H. at 139-40, 697 A.2d at 1380.

*Reversed and remanded.*

THAYER and NADEAU, JJ., did not sit; the others concurred.