Strafford
No. 98-668

THE STATE OF NEW HAMPSHIRE

v.

HASSAN A. GOODMAN

December 15, 2000

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*Gary Apfel*, assistant appellate defender, of Orford, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Hassan A. Goodman, was convicted after a jury trial in Superior Court (*Fauver*, J.) of second degree assault, RSA 631:2 (1996), and criminal threatening, RSA 631:4 (Supp. 1999). On appeal, the defendant challenges the trial court's ruling that he "opened the door" to the admission of previously excluded evidence of his prior aggressive acts towards the victim. We affirm.

On January 20, 1998, the victim met the defendant at a bar in Portsmouth. A relationship ensued, and over the next week the defendant stayed with the victim at her apartment. On January 27, the victim and the defendant returned to the bar where they met. As they were leaving for the bar, the defendant told the victim "if [she] told any one of [her] friends about [their] relationship that he would kill [her]." Later in the evening, the defendant repeated his threat. After returning from the bar in the early hours of January 28, the defendant followed the victim into the bathroom with a butcher knife and traced the knife around her face. He also threatened to kill her and forced her to perform a sexual act on him.

After some time, the victim again entered the bathroom and the defendant followed. For a second time, the defendant threatened violence and forced the victim to perform a sexual act upon him. After the assaults, the defendant fell asleep. The victim fled to a convenience store and the police were notified. The defendant was charged with two counts of aggravated felonious sexual assault and one count each of reckless conduct, second degree assault, and criminal threatening. Each charge stemmed from the incidents occurring the night of January 27 and in the early morning hours of January 28.

Prior to trial, the State moved *in limine* to introduce evidence of the defendant's aggressive acts towards the victim during the week leading up to the charged incidents. The State argued that the evidence was relevant to the defendant's intent and the victim's state of mind at the time of the assaults. N.H. R. EV. 404(b). After a hearing, the trial court denied the State's motion because it found that the evidence was more prejudicial than probative.

Whether the victim actually feared the defendant on the night of the threats and assaults was contested at trial. To refute direct testimony of that fear, defense counsel cross-examined the victim in an attempt to show that the defendant did "things that [led] her not to be scared" on the night in question. He established that the victim and the defendant had consensual sexual relations on the night of the threats and that the victim did not leave or call for help after the defendant had initially threatened to kill her. The State then argued that the defendant had "opened the door" to the admissibility of the previously excluded evidence of aggressive conduct because the defendant's cross-examination created a misimpression that the victim was not afraid of the defendant and that she could have left him at any point during the evening. The trial court ruled:

> [Defense counsel] spent a lot of time suggesting that if [the victim] was so afraid, why did [sic] she leave this house, and suggesting that this fear was a fabrication, that she really had no fear. Fear story. I'm sitting here looking at it, it's there in black and white, put up there by [defense counsel]. And I think you have — you have presented through opening statements and cross-examination a real picture of this person who you want to suggest had no fear or no basis for fear of the defendant. I think the door has been opened.

After the ruling, the victim testified about the defendant's aggressive acts during the week prior to the charged incidents. The jury acquitted the defendant of both counts of aggravated felonious sexual assault and reckless conduct, but convicted him of second degree assault and criminal threatening.

On appeal, the defendant challenges the trial court's ruling that he "opened the door." He first argues he created no misleading advantage. The State contends that through cross-examination and opening statement, defense counsel created the impression that the relationship between the victim and the defendant was harmonious until the incidents of January 27 and 28. Thus, the State argues, the jury was left with the misimpression that "the defendant's threats came out of the blue, in the context of an otherwise caring relationship."

The "opening-the-door" doctrine permits a trial judge, in his or her discretion, to admit otherwise inadmissible evidence to rebut prejudicial evidence that has been admitted. *See State v. Benoit*, 126 N.H. 6, 20, 490 A.2d 295, 305 (1985). "Opening the door is often used

to describe situations in which a misleading advantage may be countered with previously suppressed or otherwise inadmissible evidence." *State v. Bouchard*, 138 N.H. 581, 583-84, 643 A.2d 963, 965 (1994) (quotations omitted). "The trial court is in the best position to make this determination, and we will not disturb such a finding absent an abuse of discretion." *State v. Taylor*, 139 N.H. 96, 100, 649 A.2d 375, 377 (1994). On appeal, "[t]he defendant has the burden to demonstrate that the trial court's discretionary ruling is clearly untenable or unreasonable to the prejudice of his case." *Bouchard*, 138 N.H. at 583, 643 A.2d at 965.

"For the opening-the-door doctrine to apply, the testimony at issue must have created a misimpression." *State v. Weeks*, 140 N.H. 463, 468, 667 A.2d 1032, 1036 (1995). The record supports the trial court's conclusion that the defendant created a misimpression of the relationship and the victim's fear. In his opening statement, defense counsel stated:

> Finally, fear story. I'm going to ask you to consider [the victim's] claim . . . [that] in the early morning of January 28, 1998, when she was scared of Hassan based on his conduct that night and that morning, based on specific threats to kill her, based on physically menacing conduct on his part, that she feared for her personal safety and well being while she was in his presence. I'm going to ask you to consider that testimony in light of the evidence you will hear to the absolute contrary.

He then stated that the victim would testify that after the defendant "supposedly threatened to kill her a number of times," she left the bar, went out to the car, had an opportunity to leave, but chose to return to the defendant for the evening. He also referred to anticipated testimony of the victim that "when she supposedly feared for her personal safety and well being," she left the bar alone with the defendant and returned to her apartment. He stated that when the defendant wanted to leave, the victim "told this man that she supposedly feared to come inside, to come inside the confines of her apartment." He concluded by stating:

> As you hear her testimony, ask yourselves, why would a woman who is supposedly so scared of a man take such definite steps to be with the man that she supposedly feared, to take him home with her, to try to prevent him from leaving her apartment? [The victim's] story about fear would be another reason to doubt what she tells you.

During cross-examination, defense counsel questioned the victim regarding her relationship with the defendant. The victim testified that in the week preceding the threats and assaults, she and the defendant went to the movies and spent time together, and she drove him to his job. Further, he elicited testimony that although she had opportunities at the bar on January 27 to leave the defendant after he made his threats, she did not do so.

■ Essentially, defense counsel sought to impeach the victim's credibility by "paint[ing] a rosy picture of somebody who has no reason to be afraid; and if she really was afraid, she should have left." With full knowledge that the State was precluded from introducing the prior act evidence, defense counsel's opening statement suggested that the victim's fear was based only on the defendant's actions on January 27 and 28. His cross-examination further solidified this misimpression. The trial court realized that its pretrial ruling on the motion *in limine* "left the State with no way of rebutting these allegations." *State v. Fecteau*, 133 N.H. 860, 874; 587 A.2d 591, 599 (1991). Therefore, it stated that "in all fairness to the State, they can come back now and . . . establish that she really was afraid." "[T]he prejudicial impact, if any, of particular testimony . . . can best be gauged by the trial court judge." *Bouchard*, 138 N.H. at 584, 643 A.2d at 965 (quotations and brackets omitted). We find that the trial court did not abuse its discretion.

The defendant next argues that the issue of the victim's fear of the defendant was first introduced by the State in its opening statement and direct examination. He argues that he was merely mounting an appropriate defense because he was refuting what the State had first put into contention. We disagree.

While we have previously held that "[t]he State may not employ a trial strategy of introducing evidence which itself creates the necessity for admitting bad acts evidence," *State v. Crosby*, 142 N.H. 134, 138, 697 A.2d 1377, 1379 (1997), that is not the case here. The charged offenses of sexual assault required the State to show that the victim submitted by threat of physical violence and believed "that the [defendant] ha[d] the present ability to execute these threats." RSA 632-A:2, I(c) (1996). The State, therefore, presented evidence of the victim's fear to prove the charged crime. *See* RSA 625:10 (1996).

■ In its opening statement, the State referred to the fact that "[the victim] did what he told her to do because she was afraid for her life" and "she believed that he could carry out his threats." During direct examination, the State elicited testimony from the

victim that she "was scared. I was scared of him." The direct examination further touched on other incidences of the victim's fear of the defendant. The State carefully limited its opening statement and direct examination to the time period surrounding the charged assaults. We conclude that the State properly confined its remarks and evidence regarding the victim's fear.

■ The defendant next contends that the trial court erred in admitting the evidence because it did not serve to correct the perceived imbalance between the parties. We agree with the State that this issue was not preserved for our review. "A specific, contemporaneous objection is required to preserve an issue for appellate review. This requirement affords the trial court the opportunity to correct an error it may have made, or clearly explain why it did not make an error." *State v. Sullivan*, 142 N.H. 399, 403, 702 A.2d 339, 342 (1997) (quotation and citation omitted). On redirect examination, the victim testified to several incidents of the defendant's aggressive conduct towards her. Defense counsel never made a contemporaneous objection regarding the correction of any perceived imbalance. Therefore, the defendant failed to preserve this issue for appeal.

The defendant raised other issues in his notice of appeal but did not brief them. Therefore, they are deemed waived. *State v. Mountjoy*, 142 N.H. 648, 652, 708 A.2d 682, 685 (1998).

*Affirmed.*

BRODERICK, NADEAU, and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred; NADEAU and DALIANIS, JJ., took part in the final vote by consent of the parties.