Hillsborough-southern judicial district
No. 2011-322

THE STATE OF NEW HAMPSHIRE

v.

CORY FURGAL

Argued: October 11, 2012
Opinion Issued: December 21, 2012

*Michael A. Delaney*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, J. Following a jury trial in Superior Court (*Nicolosi*, J.), the defendant, Cory Furgal, appeals his conviction of second-degree murder. *See* RSA 630:1-b (2007). We affirm.

## I

The jury could have found the following facts. On the evening of October 31, 2009, the defendant attended a house party in Merrimack at the home of Robert Brackett. Although not originally invited to the party, the defendant was allowed inside without incident. Later in the evening, tempers flared on the back porch of the house when a guest discovered that his iPod was missing and the defendant refused to empty his pockets. The defendant brandished a knife and shouted obscenities at a group of guests who had gathered around him. After Christopher Vydfol tried to defuse the situation and helped persuade the defendant to put the knife away, a fight erupted. Some guests attempted to throw the defendant over the porch railing. Vydfol held onto the defendant to prevent his fall.

The defendant then jumped over the porch railing, and Vydfol approached him. The two men proceeded around the house and down the driveway. A group of guests, some of whom had been involved in the fight, gathered some distance away on the driveway. The defendant and members of this group were swearing at each other and "talking trash." Some members of the group may have held baseball bats.

At some point, Vydfol put his arms around the defendant and said that none of the guests were going to do anything. After the defendant again

pulled out his knife, Vydfol told him to put it away. The defendant told Vydfol to "get off" him. Shortly thereafter, when the defendant felt Vydfol's hands on his shoulders, heard the sound of metal dragging across concrete, and thought that he saw someone approach with something in his hand, he stabbed Vydfol in the chest and ran away. Vydfol died of his injuries.

A grand jury indicted the defendant for second-degree murder. *See* RSA 630:1-b. In his amended notice of self-defense, the defendant asserted that if he stabbed Vydfol, he did so only "to defend himself against what he reasonably believed to be the use of deadly force against him by Christopher Vydfol who acted in concert with other named and unnamed individuals." Before trial, the court denied the State's motion to strike the notice, but granted the State's motion *in limine* to exclude all evidence of a prior altercation involving Vydfol where the defendant was not present.

At trial, outside the presence of the jury, defense counsel asked the trial court to instruct the jury that the defendant was entitled to use deadly force against Vydfol if he reasonably believed that Vydfol had confined or restrained him to allow others to use deadly force against him. Defense counsel noted that RSA 627:9, II (2007) defines deadly force as "any assault or *confinement* which the actor commits with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily injury." (Emphasis added.) The State objected, arguing that the language of "the statute"[1] and case law did not support the defendant's requested instruction.

At the conclusion of the trial, the trial court instructed the jury, in relevant part, as follows:

> In deciding whether the Defendant acted in justifiable self-defense, you should consider all of the circumstances surrounding the incident. You should consider how the Defendant acted under the circumstances as they were presented to him at the time and not necessarily as they appear on detach[ed] reflection.
>
> The Defendant would have the right to use deadly force on Christopher Vydfol to defend himself if: One, he actually believed that Mr. Vydfol was about to use unlawful deadly force against ... him. In other words, the Defendant could use deadly force if he actually believed he was in danger of death or [serious] bodily injury; two, even if the Defendant actually believed that such a

---

[1] Although the prosecutor did not specify the statute he was referencing, we presume he was referring to RSA 627:4, II(a) (2007). This statute provides: "A person is justified in using deadly force upon another person when he reasonably believes that such other person ... [i]s about to use unlawful, deadly force against the actor or a third person ...." RSA 627:4, II(a).

danger existed, his belief must be reasonable. In other words, there must be reasonable grounds for the Defendant to believe that the other person was about to use unlawful deadly force against him.

Self-defense does not require actual danger to the Defendant; rather, the Defendant must reasonably believe that the other person was about to use unlawful deadly force. Deadly force means any assault or confinement which an actor commits with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily injury.

Outside the presence of the jury, defense counsel objected to the instruction because it failed to inform the jury that the defendant could use deadly force against Vydfol if he reasonably believed that "Vydfol acted alone or with others who joined to use force against the defendant." The State repeated its contention that neither RSA 627:4, II(a) nor case law supported such an instruction. The trial court explained that it did not include the defendant's "in-concert" instruction because "it is not consistent with the language of [the] statute." The trial court noted, however, that the instruction as given did not preclude the jury from finding that the defendant could use deadly force against Vydfol if he reasonably believed that Vydfol acted in concert with others to assault him. The jury found the defendant guilty of second-degree murder.

On appeal, the defendant argues that the trial court erred in: (1) refusing to instruct the jury that he could use deadly force against Vydfol if he reasonably believed that Vydfol, acting alone or in concert with others, was about to use unlawful deadly force against him; and (2) granting the State's motion *in limine* to exclude all evidence of the prior altercation involving Vydfol. We address each argument in turn.

II

"When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." *State v. Davidson*, 163 N.H. 462, 472 (2012) (quotation omitted). "The trial court is not required to use the specific language requested by the defendant. Rather, the purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v. McDonald*, 163 N.H. 115, 126 (2011) (citation and quotations omitted). "We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the

case." *Davidson*, 163 N.H. at 472 (quotation omitted); *State v. Etienne*, 163 N.H. 57, 80-81 (2011) (when a defendant raises self-defense "conduct negating the defense becomes an element of the charged offense" (quotation omitted)).

> Whether a particular jury instruction is necessary, and the scope and wording of jury instructions, are within the sound discretion of the trial court, and we review the trial court's decisions on these matters for an unsustainable exercise of discretion. To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case.

*Etienne*, 163 N.H. at 70 (citation and quotations omitted). Nevertheless, whether a statute provides a basis for a requested jury instruction raises a question of statutory interpretation, which we review *de novo. See id.*

In urging that the defendant's requested "in-concert" instruction is inconsistent with the language of RSA 627:4, II(a), the State argues that the statute precludes the defendant's requested instruction because the statute permits a person to use deadly force only on the person whom the defendant reasonably believed was about to use unlawful deadly force against him. The State focuses on the specific statutory text: "A person is justified in using deadly force upon another person when he reasonably believes that *such other person* . . . [is] about to use unlawful, deadly force against the actor . . . ." The State notes that the common meaning of "such" is "having a quality already or just specified," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2283 (unabridged ed. 2002), or "[t]hat or those; having just been mentioned," BLACK'S LAW DICTIONARY 1570 (9th ed. 2009). Thus, according to the State, to read RSA 627:4, II(a) as the defendant urges would violate a well-established canon of statutory construction — that "[w]e will not consider what the legislature might have said nor add language that the legislature did not see fit to include." *McDonald*, 163 N.H. at 126 (quotation omitted).

■■■ We find the State's arguments unavailing and disagree that the "in-concert" instruction the defendant requested is inconsistent with the terms of RSA 627:4, II(a). The plain language of the statute allows a person to use deadly force if he reasonably believes that another person is about to use deadly force against him, and RSA 627:9, II defines deadly force, in relevant part, as "any assault or *confinement* which the actor commits with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily injury." (Emphasis added.) A "confinement," in turn, means "the act of confining or state of being confined; restraint within limits." WEBSTER'S, *supra* at 476. Thus, RSA 627:4, II(a),

when read in conjunction with RSA 627:9, II, allows a person to use deadly force against another if he reasonably believes that person is about to confine or restrain him so as to allow others to employ deadly force against him. Contrary to the State's argument, we have not added language to RSA 627:4, II(a) that the legislature did not see fit to include. Rather, we have construed RSA 627:4, II(a) and RSA 627:9, II consistent with the intent of the legislature as expressed in the language of those statutes as written. *See Appeal of Liberty Assembly of God*, 163 N.H. 622, 627 (2012) ("In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." (quotation omitted)). In the future, where supported by some evidence in the record,[2] a trial court should instruct the jury that a defendant was entitled to use deadly force in self-defense against a person that the defendant reasonably believed, acting alone or in concert with others, was about to confine him with the purpose of causing or with knowledge of a substantial risk of causing death or serious bodily injury.

Nonetheless, the trial court's decision not to include the defendant's requested language in the jury instruction, does not, without more, entitle the defendant to a new trial. We still must determine whether the self-defense instruction given, in its entirety, adequately and accurately explained to the jury the law governing the permissible use of deadly force. *See Davidson*, 163 N.H. at 472. We conclude that it did.

■ Based on the entirety of the instruction, we are satisfied that a reasonable juror would have understood that the juror had to consider whether Vydfol, acting alone or in concert with others, was about to use unlawful deadly force against the defendant. We disagree with the defendant that "based on the plain language of the instruction the court gave, the jury only could have properly considered self-defense as it related to the anticipated use of force by Vydfol." The instruction properly told the jury to consider: (1) "*all* of the circumstances surrounding the [defendant's stabbing of Vydfol]" (emphasis added); and (2) "how the [d]efendant acted under the circumstances as they were presented to him at the time and not necessarily as they appear on detach[ed] reflection." Thus, a reasonable juror would have understood that the juror had to consider *all* of the circumstances surrounding Vydfol's death — necessarily including the preceding fight and the location, conduct, and intention of all persons

---

[2] "The trial court must grant a defendant's requested jury instruction on a specific defense if there is *some evidence* to support a rational finding in favor of that defense." *State v Vassar*, 154 N.H. 370, 373 (2006) (emphasis added). Here, the State assumes for the purposes of this appeal that there was some evidence to support a rational finding that Vydfol attempted to restrain the defendant to allow others to assault him.

present at the time of the stabbing. Moreover, because the jury instruction quoted verbatim the statutory definition of deadly force, which includes confinement "with the purpose of causing or which [the actor] knows to create a substantial risk of causing death or serious bodily injury," RSA 627:9, II, a reasonable juror would have understood that the defendant was entitled to use deadly force against Vydfol if the defendant reasonably believed that Vydfol had put his arms around him to confine him so as to enable others to inflict deadly force. *Cf. McDonald*, 163 N.H. at 128 (affirming jury instruction where "the trial court properly explained the law of self-defense and used the exact language of the statute").

■■ We are not persuaded by the defendant's argument that the trial court erred because the "instruction did not *expressly* inform the jury that it could consider [the defendant's] force in light of the threat posed by not just Vydfol, but Vydfol and the group of men behind him." (Emphasis added.) The necessity, scope, and wording of jury instructions are within the sound discretion of the trial court. *Id.* at 126. Moreover, in closing arguments, defense counsel argued his theory of the case and the State did not argue that the jury could not consider whether Vydfol acted in concert with others. In fact, the State twice argued that the defendant had not acted in self-defense because neither Vydfol nor *anyone else* posed a threat to him. Jury instructions need only adequately and accurately explain to the jury, in clear and intelligible language, the rules of law that apply to the case. *See Davidson*, 163 N.H. at 472. Considering all the circumstances, we conclude that the jury instructions here accomplished this task.

III

We next address the defendant's argument that the trial court erred in granting the State's motion *in limine* to exclude all evidence of a prior altercation involving Vydfol where the defendant was not present. According to the trial court's order, on October 30, 2009, an unidentified stranger allegedly punched Vydfol in the face outside Brackett's home, the same address where the defendant stabbed Vydfol the next evening. The defendant contends that the unidentified stranger was one of a group who came to Brackett's house uninvited and refused to identify themselves, and that Vydfol was punched after Brackett and his friends chased the strangers to their truck and threw a cigarette at one of them. In granting the State's motion, the trial court ruled:

> This court finds that the alleged assault on October 30th is irrelevant to the charges currently pending against the defendant, as the facts and circumstances of each incident differ. The prior incident involved different people and, even accepting the defen-

dant's proffer, occurred for different reasons. Even if the incident could be established by clear proof, which the court cannot find based on the proffer, the two incidents are not similar enough in facts to be relevant.

The defendant did not ask the trial court to reconsider its ruling.

On appeal, the defendant challenges the trial court's ruling on three grounds. First, he argues that the trial court erred when it referred to the "clear proof" standard because that standard applies only when the State seeks to admit prior bad act evidence under New Hampshire Rule of Evidence 404(b), not, as here, where the State seeks to exclude evidence. Second, the defendant argues that if the trial court used the term "clear proof" to mean there was insufficient proof that the prior altercation occurred, the trial court erred because the parties agreed that the incident occurred. Third, the defendant argues that because the parties at trial offered competing characterizations of the group of guests at Brackett's house on the evening of Vydfol's death, evidence of the prior altercation would have "afforded the jury additional facts with which to evaluate the claims." According to the defendant, the prior evening's altercation was evidence of the aggressive nature of Brackett and his friends towards outsiders, and was admissible because "[t]he more menacing this group seemed, the more likely that the jury would believe [the defendant] reasonably perceived a danger of serious bodily injury." In sum, the defendant argues that evidence of the prior altercation was relevant because it occurred within one day of Vydfol's death, involved some of the same actors, and displayed Brackett and his friends' aggressive conduct towards relative outsiders who refused to comply with their requests.

█ "The decision to admit or exclude evidence is within the discretion of the trial court." *State v. Dupont*, 149 N.H. 70, 81 (2003). "In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made." *McDonald*, 163 N.H. at 121. To show an unsustainable exercise of discretion, "the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Villeneuve*, 160 N.H. 342, 345 (2010).

█ We conclude that the trial court sustainably exercised its discretion in finding that the prior altercation was not relevant and, therefore, inadmissible at trial. To the extent the defendant contends that the events of the prior evening were probative of his state of mind at the time he stabbed Vydfol, this would be true only if the defendant was aware of such events prior to the stabbing. However, the defendant was not present at the

prior altercation and, although he may have had a general awareness that there was some unspecified "trouble" the night before, he did not claim to know any of the details of what had occurred on that occasion, thus undercutting any claim that he would have had reason to be especially wary of Brackett, Vydfol, or their friends. *Cf. State v. Fish*, 213 P.3d 258, 270 (Ariz. Ct. App. 2009) ("[s]pecific act evidence is not admissible to show a defendant's state of mind unless [he] was aware of the . . . prior acts at the time of the altercation"). Moreover, insofar as the defendant asserts that the alleged aggressiveness of Brackett and his friends the previous evening was probative of their aggressiveness on the night of the murder, the assertion is based entirely on the prohibited rationale of propensity for bad behavior, which Rule 404(b) specifically disallows. *See State v. Ellsworth*, 142 N.H. 710, 717-18 (1998); *accord State v. Jacobs*, 689 S.E.2d 859, 864 (N.C. 2010) ("[E]vidence of the victim's prior bad acts would be impermissible character evidence if its only relevance was to the victim's behavior at the time of the shooting.").

Because we conclude that the excluded evidence was not relevant and, therefore, inadmissible, we need not address the defendant's arguments regarding the trial court's use of the "clear proof" standard.

Finally, we deem waived the remaining questions that the defendant raised in his notice of appeal but did not brief. *State v. Kelley*, 159 N.H. 449, 455 (2009).

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.