# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0209, <u>State of New Hampshire v. Walton Valentin</u>, the court on June 30, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Walton Valentin, appeals his convictions for first degree assault with a firearm, <u>see</u> RSA 631:1, I(b) (2016) (establishing elements of offense); RSA 651:2, II-g (2016) (establishing sentencing limits applicable to certain felony convictions), and for violation of a protective order, <u>see</u> RSA 173-B:9, III (2014). He argues that the Trial Court (<u>Delker</u>, J.) erred when it: (1) ruled that certain evidence was admissible under New Hampshire Rule of Evidence (Rule) 404(b); (2) denied his pretrial motion to dismiss the charges of attempted murder and criminal threatening; (3) ruled that certain evidence was admissible under Rule 803(4); and (4) denied his motion to dismiss the violation of a protective order charge at the close of the State's case. We affirm.

The following evidence was adduced at trial. The victim and the defendant had dated for approximately four years when the victim ended their relationship. They frequently argued during their relationship. The victim obtained a restraining order against the defendant from the Lawrence, Massachusetts District Court on June 24, 2013, after a hearing.

On November 9, 2013, the defendant called the victim at her home in Massachusetts to talk about their relationship. He told her that he was nearby and she went to pick him up. He directed her to drive to a hotel in Salem, New Hampshire and to pay for a room there. After they entered the hotel room, the defendant began to argue with the victim and pushed her against the wall. He pinned her there, holding her face and throat. He hit her twice in the head with an object; at some point, she lost consciousness.

When she regained consciousness, the victim called a friend because she was worried that, given her restraining order against the defendant, she "could get into trouble" for being with him. The victim testified at trial that she did not know her friend's last name but that the friend had advised her to tell the police that the defendant had taken the victim to the hotel against her will. At trial, the victim's testimony was inconsistent as to whether the friend told her to say that the defendant kidnapped her or to say that the defendant kidnapped her "with a gun."

The victim testified that she called 9-1-1 after speaking with her friend; portions of the recordings of that call were played for the jury. During her 9-1-1 call, she reported that the defendant had taken her to the hotel "under threat with a gun" and that, while in the hotel room, he struck her with a gun.

The jury also heard testimony from three other witnesses to whom the victim described the assault. She told Officer Gomez, who responded to the call, that the defendant had pointed a gun at her and pulled the trigger but that it jammed. She told an Emergency Medical Technician (EMT) who responded to the scene that she had been choked and hit in the head with a gun. After she was taken to the hospital, she reported to the nurse who treated her that she had been choked and hit multiple times with a gun.

The victim met with Detective Bernard the next day at the home of her friend. It was obvious to Bernard that the victim "was scared" and that she had been "beaten up . . . ; she was suffering several scratches and cuts on her face." She prepared a statement about the assault with the help of a Spanish-speaking police officer and signed it.

The defendant was charged with attempted murder, kidnapping, two alternative counts of first degree assault, one count of second degree assault, criminal threatening, armed robbery, theft by unauthorized taking, violation of a protective order, and simple assault. Trial was scheduled for May 18, 2015, but the trial was continued when the State was unable to subpoena the victim. A trial deposition was subsequently taken of the victim, see RSA 597:6-d (2001), but the deposition transcript was not admitted at trial. The victim testified at trial.

On the day of jury selection, the defendant moved to dismiss the charges of attempted murder, kidnapping, first degree assault with the use of a firearm, and criminal threatening. In response, the State entered a nolle prosequi on the kidnapping charge but objected to the dismissal of the other charges. The court denied the defendant's motion. Prior to the defendant's opening statement on the first day of trial, the court conducted an Anaya colloquy with the defendant, in which he conceded that he had committed simple assault by pushing and striking the victim with an object thereby causing her bodily injury. See State v. Anaya, 134 N.H. 346, 353 (1991) (holding that decision to admit guilt of a lesser included offense cannot be made without consent of defendant). Consequently, as the defendant observes, "[t]he trial was essentially about whether the object was a gun and whether or not that object, whatever it was, constituted a deadly weapon."

At the close of the State's case, the trial court dismissed the attempted murder, criminal threatening, armed robbery, and theft by unauthorized taking charges. The defendant was convicted on both counts of first degree assault and sentenced on the charge of first degree assault with a firearm. He was also

convicted of simple assault and violation of a protective order. On appeal, he challenges his convictions for first degree assault with a firearm and violation of a protective order.

The defendant first argues that the trial court erred in ruling that evidence of prior bad acts that he committed against the victim were admissible under Rule 404(b). The decision whether to admit evidence of prior bad acts lies within the discretion of the trial court. State v. Davidson, 163 N.H. 462, 467 (2012). We will reverse the decision of the trial court only if the defendant can demonstrate that the decision was clearly unreasonable or untenable to the prejudice of his case. Id.

Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

N.H. R. Ev. 404(b). To be admissible under Rule 404(b), evidence must be relevant for a purpose other than to prove the defendant's character or disposition; there must be clear proof that the defendant committed the act; and the probative value of the evidence must not be substantially outweighed by its prejudice to the defendant. Davidson, 163 N.H. at 469. We note that, although Rule 404(b) prohibits the introduction of bad acts evidence to prove a defendant's character as a basis of establishing guilt of the crime charged, it expressly permits the evidence to be admitted for other purposes. See id.

Prior to trial, the State filed a motion in limine seeking a ruling that the following evidence was admissible under Rule 404(b): (1) the defendant followed and threatened the victim and her brother and threatened to kill her (June 24 incident); (2) the defendant slapped her and threatened to kill her and her new boyfriend (June 29 incident); (3) the defendant entered her residence and assaulted her and her friend with a knife (October 29 incident); and (4) the victim had obtained restraining orders against the defendant in the past. The trial court granted the State's motion, finding that "prior abuse evidence" was admissible under Rule 404(b) to prove that the defendant had the purposeful intent to commit the charged acts and to provide evidence of the victim's state of mind.

On the first day of trial, the victim's testimony did not confirm the specific acts proffered by the State in its motion in limine. The defendant then moved for a mistrial at the beginning of the second day of trial, arguing that the evidence that had been admitted on the previous day was inadmissible and prejudicial. The trial court reconsidered its ruling after finding that the State had not

3

presented "substantive evidence of many of the most serious prior bad acts that the State had proffered earlier in the case." The court then ruled that the challenged evidence could only be considered to evaluate the victim's credibility. Under this standard, the court explained, "so long as the evidence is relevant for some admissible reason, the Court doesn't need clear proof of those prior acts in order for - - to admit that evidence. Rather, it's the - - the ordinary weighing of prejudice and probative and relevance that applies in the ordinary [Rule] 401, 403 context."

The defendant argues that the trial court erred in ruling that it did not need to find that there was clear proof that the defendant committed the prior acts in order to admit them under Rule 404(b). See, e.g., State v. McGlew, 139 N.H. 505, 507 (1995). Because the evidence admitted at trial constituted "bad acts evidence," the trial court should have addressed the clear proof prong of the Rule 404(b) test. The defendant, however, has failed to establish prejudice because, on this record, the other acts evidence was admissible as a matter of law. Cf. State v. Hayward, 166 N.H. 575, 583 (2014) (observing that when a discretionary decision is at issue and the trial court has not exercised that discretion, we may sustain the trial court's ruling on a ground upon which it did not rely if there is only one way the trial court could have ruled as a matter of law).

We note at the outset that some of the incidents identified in the State's motion in limine were not introduced at trial. In support of his argument, however, the defendant contends that the jury heard the State assert in questioning that those acts occurred. To the extent that the defendant argues that the State's questions constituted evidence before the jury, we disagree. The trial court specifically instructed the jury that it was "not allowed to consider the prosecutor's questions as evidence." See, e.g., United States v. Cudlitz, 72 F.3d 992, 1002 (1st Cir.1996); see also State v. Cooper, 168 N.H. 161, 170 (2015). To the extent that the victim testified at trial that any part of the prior bad acts cited by the defendant did occur, we conclude, as a matter of law, that, on the record before us, there was clear proof of those acts. Accordingly, the defendant has failed to demonstrate that the trial court's decision was clearly unreasonable or untenable to the prejudice of his case. See Davidson, 163 N.H. at 467.

The defendant also argues that the prior abuse evidence was not relevant to prove an issue in dispute. We will assume without deciding that the defendant has preserved his relevancy challenge. The State advanced the theory at trial, supported by expert testimony, that the victim was minimizing the details of the defendant's conduct in her trial testimony because she was a victim of domestic abuse. Therefore, the victim's state of mind became relevant. Accordingly, specific evidence of the prior abuse was relevant to explain why the victim might minimize the defendant's conduct and to help the jury evaluate the victim's credibility. See, e.g., State v. Beltran, 153 N.H. 643, 648-49 (2006) (evidence of defendant's abuse of his girlfriend, a prosecution witness, admissible to explain

4

her participation in criminal conduct and her initial false statements to police and was "highly relevant to her credibility, an issue vigorously pursued at trial").

The defendant also argues that the unfair prejudice of the evidence of his prior bad acts substantially outweighed its probative value. The trial court is in the best position to gauge the potential prejudicial impact of particular testimony, and to determine what steps, if any, are necessary to obviate the potential prejudice. State v. Towle, 167 N.H. 315, 324 (2015). We afford considerable deference to the trial court's determination in balancing prejudicial impact and probative worth. Id.

The trial court gave the jury several limiting instructions that addressed the evidence to be considered by the jury in its deliberations, including the following:

> Okay, so ladies and gentlemen, before the prosecutor continues to ask questions in this case, I need to give you some instructions about the use of some of the evidence that's come in, in this case. So sometimes the law allows the jury to consider evidence only for a limited purpose. And when that happens, I have to give you some special instructions about how to use the evidence that's admissible for some purposes, but not admissible for others.

> And so in this case, you've heard a line of questioning from the prosecutor about prior incidents during the relationship between [the victim] and the defendant. That evidence is only admissible for the purpose of evaluating [the victim]'s credibility as a witness in this case. In other words, you're not allowed to consider the prior incidents in the relationship between [the victim] and the defendant for purposes of establishing the defendant's character or his propensity to commit the charged crimes.

> In other words, you're not allowed to conclude that because the defendant had some encounters with [the victim] in the past, he must have committed the charged offenses in this case. That's not a permissible use of that evidence. Rather, you can consider [the victim]'s prior encounters with the defendant and her answers to the questions that were posed to her, as it has bearing to her credibility as a witness in this case.

> I also want to remind you, as I told you in the original instructions, that what the lawyers say is not evidence. So in this case, you heard the prosecutor present questions to the witness; those questions are not evidence. In other words, the prosecutor

5

posed questions to [the victim] that were premised on whether events occurred or did not occur.

So you're not allowed to consider the prosecutor's questions as evidence or the premise of those questions. You can only consider [the victim's] answers and her responses to questions as evidence in this case.

Given the limited evidence that was adduced about the defendant's prior bad acts, its significant relevance to the victim's credibility, and the instructions given by the trial court, we conclude that the defendant has failed to demonstrate that the danger of unfair prejudice substantially outweighed the probative value of the evidence at issue. See N.H. R. Ev. 403.

The defendant next argues that the trial court erred in denying his pretrial motion to dismiss the charges of attempted murder and criminal threatening. On the morning of jury selection, the defendant moved to dismiss the charges of attempted murder, kidnapping, criminal threatening, and the first degree assault charge that alleged that he used a firearm. He argued that, because the trial court had ruled that statements made by the victim to the investigating officer were not admissible under Rule 803(2) (excited utterances exception to the hearsay rule), and because the victim had testified in a pretrial deposition that she did not know whether the defendant had a gun during the assault, the State did not have a good faith basis to believe that it had sufficient evidence to support those charges. The trial court denied the defendant's motion, ruling that there was a good faith basis "in light of the medical statements of diagnosis, in light of the domestic violence aspects of this case for the matters to go to the jury, and this is why we have trials. I mean, the reality is we have trials because sometimes the State can prove its case, and sometimes it can't prove its case, and that's the value of the system."

We have previously observed that our rules do not provide for a pretrial determination of the sufficiency of the evidence in criminal cases. State v. Bisbee, 165 N.H. 61, 65-66 (2013). In this case, as the trial court aptly noted, the victim's pretrial statements and testimony varied from clearly describing the assault on the night of its occurrence to, as time passed, professing an inability to recall the details of the assault. At trial, the State presented the victim as a witness. It was for the jury to evaluate witness credibility, to resolve conflicts in testimony and to determine the weight to be given the evidence. State v. Alwardt, 164 N.H. 52, 57 (2012). We conclude that the trial court did not err in denying the defendant's pretrial motion to dismiss.

The defendant next argues that the trial court erred in admitting hearsay statements under Rule 803(4). Rule 803(4) provides that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general

6

character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule, even if the declarant is available as a witness.  N.H. R. Ev. 803(4).  For a statement to be admissible under this rule: (1) a court must find that the declarant intended to make the statements to obtain a medical diagnosis or treatment; (2) the statements must describe medical history, or symptoms, pain, sensations, or their cause or source to an extent reasonably pertinent to diagnosis or treatment; and (3) the court must find that the circumstances surrounding the statements support their trustworthiness.  State v. Munroe, 161 N.H. 618, 627 (2011).  We accord the trial court considerable deference in considering the admissibility of evidence; we will affirm its decision absent an unsustainable exercise of discretion.  Id. at 626.  To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case.  Id.

The defendant challenges the admission of four statements made by the victim: (1) two statements that she made during her 9-1-1 telephone call; (2) her statement to the EMT who treated her at the hotel; and (3) her statement to the nurse who treated her at the hospital.  In one of the challenged 9-1-1 statements, the victim reported that the defendant took her to the hotel under threat with a gun.  In each of the other challenged statements, the victim reported that she had been hit with a gun.  The defendant argues that the court "misapplied" the Rule 803(4) test "by not giving proper weight to [the victim]'s motive to lie."  He observes that Officer Gomez was present when the victim described the assault to the EMT and to the treating nurse and argues that she continued to say that the defendant had a gun due to Gomez's presence and her fear about possible repercussions for violating the restraining order.  The trial court found that the statements were sufficiently reliable to be admissible under Rule 803(4) because "a reasonable person in [the victim's] position would understand that by telling medical providers that she had been struck with a gun and that she had been choked, that that could and might very well trigger fairly invasive medical procedures."

We first address the admissibility of the victim's statements that the defendant hit her with a gun.  Based upon the record before us, we conclude that the trial court's ruling that these statements were admissible under Rule 803(4) is sustainable.  The defendant does not cite, nor have we found, testimony in the record that the victim's friend ever told her to lie about being hit in the head with a gun.  Moreover, although the defendant contends that the victim's description of the assault to the EMT was affected by the presence of Gomez, Gomez testified that he did not aid in translating between them because his attention was directed to "[t]rying to get all the information that I had received to my department and to the other officers."

To the extent that the trial court erred in admitting the victim's statement made during her 9-1-1 telephone call that she had been "taken under threat with a gun," we conclude that the error was harmless beyond a reasonable doubt.  We

7

note that the State entered a <u>nolle</u> <u>prosequi</u> on the kidnapping charge prior to trial.  To the extent that the cited statement "taken with a gun" was relevant to the determination of whether the victim was hit with a gun, this testimony was cumulative in light of the other overwhelming evidence that the defendant had a gun.  <u>See</u> <u>State v. Vandebogart</u>, 139 N.H. 145, 157-58 (1994) (setting forth harmless error standard).

The defendant next argues that, because the State failed to present evidence that he was ever served with a protective order, the trial court erred in denying his motion to dismiss the charge of violation of a protective order at the close of the State's case.  When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all of the evidence and all reasonable inferences therefrom in the light most favorable to the State.  <u>State v. Sanborn</u>, 168 N.H. 400, 412 (2015).  The defendant bears the burden of demonstrating that the evidence was insufficient to prove guilt.  <u>Id</u>.  When we review the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation.  <u>Id</u>. at 413.  Moreover, the trier of fact may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom.  <u>Id</u>.

The information that charged the defendant with the violation of a protective order alleged that he: (1) knowingly; (2) violated a protective order issued by the Lawrence, Massachusetts District Court; (3) by contacting the victim and coming within 100 yards of her.  <u>See</u> RSA 173-B:9, III.  The defendant argues that, because no evidence was introduced that he was ever served with a protective order, or otherwise notified of the order, the State failed to establish that he knowingly violated it.

The evidence before the jury included the following: (1) the victim obtained a protective order against the defendant in June 2013; (2) the defendant was aware that the victim was seeking the protective order;  and (3) the defendant was in the court room when the victim obtained the protective order.  Based upon the record before us, we conclude that the trial court did not err in denying the defendant's motion to dismiss the charge of violation of a protective order.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**